IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WILLIE PATTON-BEY,                    :

      Petitioner,                    :

vs.                                   :        CA 06-0859-WS-C

MIKE HALEY, et al.,                   :

      Respondents.

## <u>REPORT AND RECOMMENDATION</u>

Willie Patton-Bey (hereinafter, "Patton"), a state prisoner presently in the physical custody of the warden of the Federal Correctional Institute in Talledega, Alabama (Doc. 20), has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2241.  In his petition, Patton alleges that since September 15, 2006, the United States Parole Commission has deprived him of his liberty without due process of law. (Doc. 1, at 3-7; *see also id.* at 8-9 ("Petitioner states that where the unknown U.S. Parole Commissioner and his agents knowingly and willfully fabricated the parole commission records to issue a falsified parole violator warrant directly resulting in his unlawful <u>arrest</u> and <u>imprisonment</u> without fundamental "<u>Due</u> Process" of Law as embodied in the <u>5th</u> and <u>8th</u> Constitutional Amendments illegally deprived of

<u>Life</u>, <u>Liberty</u> and <u>Property</u>, the "<u>Great</u> <u>Writ</u>" requires petitioner's immediate release from the unlawful restraint simpliciter by respondents.") (emphasis in original)) This cause is before the Court on the petition (Doc. 1), the federal respondents' answer with attachments (Doc. 7),[1] Patton's objection (Doc. 14), and petitioner's traverse to the federal respondents' answer (Doc. 18). A careful review of the record has been completed and it is determined that it contains sufficient facts upon which the issues under consideration may be properly resolved.  Therefore, no evidentiary hearing is required. (*See* Doc. 22 (order denying petitioner's motion for an evidentiary hearing))

**<u>FINDINGS OF FACT</u>**

1.     On August 25, 1976,  Patton entered counseled guilty pleas in this Court to one count of bank robbery and one count of use of a firearm during the commission of a bank robbery; he was sentenced to a seventeen (17) year term of imprisonment on the robbery count and a concurrent two (2) year term of imprisonment on the firearm count. (Doc. 10, Attachment) While serving his sentence at the Federal Correctional Institute in Talledega, Alabama, Patton, on February 3, 1982, entered a counseled guilty plea to

---

[1]     Mike Haley also filed a response in this case (Doc. 9), as petitioner was in his physical custody upon the filing of the petition. However, petitioner is no longer in Haley's physical custody (Doc. 20); therefore, Haley is no longer a proper respondent in this case. Accordingly, Haley is due to be **DISMISSED** from this action.

knowingly conveying a weapon (a knife) within the correctional facility. (Doc. 7, Exhibit B) Petitioner was sentenced to forty-two (42) months of imprisonment, said sentence "to commence upon due and lawful release from custody under sentence he is presently serving imposed by the United States District Court for the Southern District of Alabama, case number 76-115; or until otherwise discharged by law." (*Id.*) Accordingly, the total term of imprisonment in effect for Patton was 20 years 6 months (i.e., 17 years plus 42 months). (Doc. 7, Exhibit B, SENTENCE COMPUTATION RECORD)

2.     Patton's presumptive parole date of January 13, 1982, was rescinded because of numerous disciplinary infractions by Patton at the institution and he was continued to the expiration of his sentence. (Doc. 7, Exhibit C)

3.     Patton was mandatorily released from prison on November 24, 1989. (Doc. 7, Exhibit D) Upon release, petitioner was ordered "to remain under the jurisdiction of the United States Parole Commission, as if on parole as provided in Title 18, U.S.C. Section 4164, . . . until expiration of the maximum term . . . of sentence, less 180 days on July 9, 1996 with a total of 2,599 days remaining to be served." (*Id.*)

4.     By letter dated December 18, 1991, Patton's United States

probation officer, H. Morris Northcutt, Jr., advised the United States Parole Commission that petitioner was arrested on December 17, 1991 by Alcohol, Tobacco and Firearms' ("ATF") agents on a charge of possession of a firearm by a convicted felon. (Doc. 7, Exhibit E) "Based upon the seriousness of this offense, coupled with the fact that the subject is presently on parole for armed bank robbery, it is requested that a warrant be issued, immediately, for his arrest." (*Id*. at 4) The Parole Commission issued the requested arrest warrant on December 23, 1991. (Doc. 7, Exhibit F-1; *see also id*., Exhibit F-2)

5.      Patton was convicted in this Court of possession of a firearm by a convicted felon and possession of an unregistered firearm and, on April 30, 1992, was sentenced to a total term of imprisonment of 162 months. (Doc. 7, Exhibit G)[2]

6.      The Parole Commission conducted a dispositional revocation hearing, on or about June 2, 1993, and revoked petitioner's mandatory release. (Doc. 7, Exhibit H)

> None of the time spent on mandatory release shall be credited. The Commission has considered the mitigating circumstances brought forth at your revocation hearing and has determined, in its discretion, that forfeiture of all street time is warranted under the circumstances. The unexpired portion of your original

---

[2]      Petitioner's sentence was reduced to 120 months on February 18, 1994. (Doc. 7, Exhibit A, pg.4)

> Federal sentence will commence upon release from the new term or upon parole to your new sentence, whichever comes first. Continue to a Presumptive Parole after service of 60 months December 16, 1996 to the 162-month SRA sentence.

(*Id.*) Petitioner's presumptive parole date was rescinded and continued on four different occasions because of Patton's commission of numerous institutional infractions. (Doc. 7, Exhibits I-L) In the last recision action, when petitioner's parole was continued to expiration of his sentence, the Parole Commission notified Patton that he would "be subject to the Special Mental Health Aftercare Condition" which required him to "participate in an in-patient or an out-patient mental health program as directed by [his] U.S. Probation Officer." (Doc. 7, Exhibit L)

7.      Patton was mandatorily released from prison on February 14, 2006. (Doc. 7, Exhibit M) Petitioner was advised that upon his release he was to remain under the jurisdiction of the Parole Commission, as if on parole as provided by 18 U.S.C. § 4164, until the expiration of his sentence, less 180 days, on October 30, 2007. (*Id.*) Thus, petitioner had a "total of 803 days remaining to be served." (*Id.*)

8.      By letter dated May 22, 2006, petitioner's probation officer, Kevin J. Dudeck, lodged a warrant request with the Parole Commission based upon Patton's May 21, 2006 arrest on a charge of third-degree domestic

violence. (Doc. 7, Exhibit N) Approximately two weeks later, on June 7, 2006, petitioner's probation officer withdrew the warrant request. (Doc. 7, Exhibit O)

> On May 22, 2006, a warrant request was forwarded to your office regarding Patton's arrest for domestic violence, third degree. His sister was the victim of the assault, which charge remains pending. At that time, he was extremely hostile toward his sister and his mother, who remain the only two support persons in his life. Patton subsequently left the residence with no visible means of personal or financial support.
>
> Since that time, Patton and his sister have reconciled for the benefit of their mother, who experiences poor health. Patton has calmed considerably and actually appears more coherent and responsible than prior to the incident. He has since returned to the family residence, continues to seek medical assistance for his glaucoma, and maintains contact with his vocational rehabilitation counselor. Patton is aware the Parole Commission may issue a warrant as a result of his conduct.
>
> Patton is scheduled to appear in Mobile Municipal Court on July 10, 2006. Based upon Patton's continued progress, the Probation Officer requests a warrant not be issued at present but reserves the right to request a warrant be issued pending the disposition of the charges with consideration for his continued personal progress.

(*Id.*)

9.     By letter dated August 10, 2006, Kevin Dudeck advised the Parole Commission that Patton was not abiding by his conditions of supervision inasmuch as he was refusing to seek mental health treatment as

directed. (Doc. 7, Exhibit P)

Patton continues to contend his mandatory release supervision remains an illegal sentence. Likewise, he continues to believe he will receive a favorable ruling on his pending litigation against the U.S. Parole Commission.

Please refer to previous correspondence wherein arrangements were made for Patton to report to Mobile Mental Health for a mental health intake assessment on June 13, 2006, at 7:30 a.m. A Contract Services Plan was completed by the probation officer, which Patton refused to sign due to his pending litigation. However, Patton did agree to sign the release of information form whereby the documents were forwarded to Mobile Mental Health.

On June 13, 2006, Patton reported as directed to Mobile Mental Health. When directed to sign intake assessment paperwork, Patton refused unless the probation officer faxed a letter directing him to sign the required forms, due to his aforementioned pending litigation. The probation officer was at a seminar and unable to assist Patton. Consequently, the assessment was terminated.

Since being received on Parole supervision, Patton has been a client of Alabama Department of Rehabilitation Services. In order for Patton to remain a client of the agency, he was required to submit to a mental health assessment through Mobile Psychological Associates whereby he was assessed on July 18, 2006. The results of the enclosed assessment revealed DSM-IV-TR diagnoses of a "Schizoid Personality Disorder" and "Paranoid Personality Disorder with Avoidant Traits and Sadistic Personality Features." Daniel L. Koch, Ph.D., recommended a referral for Patton to Mobile Mental Health. Patton disputed the results and requested a meeting with Dr. Koch. The Probation Officer arranged a meeting with Dr. Koch, which occurred on August 8, 2006, and was also attended by the Probation Officer.

On that date, Patton advised Dr. Koch he rejected the results of the psychological evaluation, as well as Dr. Koch's interpretation of the results, and thereby advised both him and the probation officer he would not accept a referral for additional mental health treatment. Furthermore, he advised Dr. Koch a lawsuit would be filed against him. Accordingly, Patton is no longer a client of the Alabama Department of Rehabilitation Services as a result of his failure to comply with additional mental health treatment.

The probation officer concurs with the results of the psychological evaluation based upon a review of the psychological evaluation, Dr. Koch's interpretation of the psychological evaluation, and the supervision of Patton. Patton is clearly in need of additional mental health treatment and would likely benefit from additional treatment. This has been extensively conveyed to Patton on numerous occasions. However, he adamantly refuses to comply. Patton was advised the Parole Commission would be notified of his failure to comply.

Regarding Patton's pending charge for domestic violence, third degree, in M-06-05-3908, he is scheduled to appear in Mobile Municipal Court on August 23, 2006. He contends he will dismiss his court-appointed attorney for ineffective counsel. Consequently, further proceedings may be uncertain.

Based upon Patton's aforementioned noncompliance, it appears a warrant would be justified. Please advise of a continued course of supervision with Patton with respect to his aforementioned noncompliance and pending charge. He has been otherwise compliant and has presented no additional supervision problems.

(*Id.*)

10.    The Parole Commission issued a warrant for Patton's arrest on

8

September 1, 2006, based upon his purported violation of one or more of his conditions of release. (Doc. 7, Exhibit Q-1; *see also* Doc. 7, Exhibit Q-2 ("You shall, unless you have been convicted of a new offense, be given a preliminary interview by an official designated by a Parole Commissioner to determine if there is probable cause to believe that you have violated the conditions of your release, and if so, whether to release you or hold you for a revocation hearing. At your preliminary interview and any subsequent revocation hearing you may present documentary evidence and voluntary witnesses on your behalf, and, if you deny the charge(s) against you, you may request the presence of those who have given information upon which the charges are based. Such witnesses will be made available for questioning unless good cause is found for their non-appearance. You may be represented by an attorney or other representative of your choice, or, if you are unable to pay for counsel, an attorney will be provided by the U.S. District Court if you will fill out and promptly return a Form CJA-22 to a U.S. Probation Officer."))

11.    On September 15, 2006, the warrant was executed. (Doc. 7, Exhibit R) That same day, a probation officer, Richard Bemis, met with Patton for the purpose of conducting a preliminary interview. (*Id.*) The interview was not conducted, however, because of Patton's request for appointment of

counsel[3] and his assertion that he needed to call voluntary and involuntary witnesses to give testimony regarding the charges.  (*See* Doc. 7, Exhibit R) "He understands that the Parole Commission may decide to conduct the postponed interview as a combined preliminary interview/local revocation hearing." (*Id.*)

12.    By letter dated October 5, 2006, Kevin Dudeck advised the Parole Commission that Patton's domestic violence charge had been nolle prossed by the Mobile Municipal Court on October 4, 2006 due to his nonappearance on account of being in federal custody. (Doc. 7, Exhibit S)

13.    On November 2, 2006, the Parole Commission advised Richard Bemis that it was not its intention to conduct a combined preliminary interview and revocation hearing; therefore, a preliminary hearing was still needed. (*See* Doc. 7, Exhibit T) The Federal Public Defender's Office was appointed to represent Patton on November 2, 2006, and the preliminary interview was scheduled for November 8, 2006. (*Id.*) Following the interview, Probation Officer Bemis made the following recommendations regarding probable cause:

> **Charge No. 1:**  Mr. Patton denies these charges. Because the cases were nolle prossed locally, the Probation Officer makes a finding that there is no probable cause to proceed with this charge.

---

[3]    To this end, Patton completed a financial affidavit. (*See* Doc. 1, Exhibit 5)

> **Charge No. 2:**  Mr. Patton denies this charge. The Probation Officer finds that there is probable cause to believe that Mr. Patton has refused to participate in mental health treatment since August 8, 2006. This conclusion is based on probation officer Dudeck's statements regarding his efforts to have Mr. Patton attend mental health treatment, and Mr. Patton's refusal on August 8, 2006. It is further based on spontaneous statements made by Mr. Patton during the preliminary interview.

(*Id.*) Patton requested a local revocation hearing, with representation by appointed counsel, provided he was not ordered released by the Parole Commission. (*See id.*)

14.    By letter dated November 8, 2006, Patton's attorney, Christopher Knight, Esquire, requested that the Parole Commission approve a psychological evaluation of his client for the purpose of determining whether petitioner was competent to proceed with the revocation hearing. (Doc. 7, Exhibit U)

> Based on [Dr. Koch's evaluation] and on the behavior of Mr. Patton at the preliminary hearing this morning, I have grave doubts about his competency to proceed with the parole revocation hearing. A copy of Dr. Koch's evaluation can be obtained from Mr. Dudeck. Dr. Koch did not evaluate Mr. Patton for competency.

> USPO Richard Bemis conducted the preliminary hearing. It is our contention that the hearing was conducted in an untimely manner and the delay of approximately 55 days in conducting the hearing was unreasonable under 18 U.S.C. § 4214 (now repealed), § 235 of Act of October 12, 1984, P.L. 98-472, and provisions extending the Parole Commission, which appear at

11

notes to 18 U.S.C. § 3551. We, therefore, move to dismiss the petition because Mr. Patton was prejudiced by the delay of the hearing. He has been made to spend his time at the Mobile Metro Jail in solitary confinement and has been without necessary medication for his glaucoma condition.

Mr. Bemis determined at the hearing this morning that there was insufficient evidence to establish probable cause on Charge No. 1 of the petition but found sufficient evidence to establish probable cause on Charge No. 2, which charges Mr. Patton with wilfully refusing to participate in mental health treatment since 8/8/06. A written summary of these findings will follow, according to Mr. Bemis. It is our contention that there is no provision in Mr. Patton's initial conditions of parole that require him to participate in mental health treatment. Although a notice of action by the Parole Commission in 2004 apparently added this requirement, we contend that no one explained this to Mr. Patton so that he understood that it was a condition of his parole that he participate in this treatment. We further contend that Mr. Patton's mental condition may preclude his understanding of this condition of parole.

I look forward to the Commission's ruling on the motions set forth herein. I have requested in writing a local parole revocation hearing and request that it be conducted at the earliest possible date. Mr. Bemis was provided the names of witnesses requested on behalf of Mr. Patton at that hearing.

(*Id.*) One week later, on November 15, 2006, petitioner's attorney requested

that the Parole Commission release his client pending the revocation hearing.

(Doc. 7, Exhibit V)

15.     On November 20, 2006, Patricia D. Vines, a case analyst with

the Parole Commission, recommended a probable cause finding not only with

respect to the petitioner's violation of the mental health condition but, as well, for the nolle prossed domestic violence charge. (Doc. 7, Exhibit W) In addition, Vines recommended that Patton not be released pending his revocation hearing. (*Id*. at 2) Vines' recommendations were adopted by a reviewing designee of the parole commissioner on November 20, 2006. (*Id*. at 4 ("Re: mental competency – no evidence that [defendant] would be unable to understand the violations alleged against him or be able to participate in a revocation hrg. Thus, I agree & do not recommend postponement for mental competency evaluation."))[4] Petitioner, through his attorney, was notified of the Parole Commission's findings by letter dated November 20, 2006. (Doc. 7, Exhibit X)

16.     On December 21, 2006, an examiner with the Parole Commission, Rob Haworth, attempted to conduct a local revocation hearing. (Doc. 7, Exhibit Y)

> The hearing was to occur at 1 pm at the US Marshals Lockup located in the US District Courthouse in Mobile, AL. Prior to the hearing Federal Public Defender Christopher Knight telephoned this examiner to inform me that subject had fired him and did not want him to represent him. Attorney Knight agreed to show up for the hearing in case he could assist in any way or

---

[4]     As a result, by letter dated November 20, 2006, Vines informed petitioner's attorney that the Commission had denied the request for a psychological evaluation. (*See* Doc. 14, Exhibit A)

in case subject changed his mind.

.        .        .

At 1 pm this examiner, Attorney Knight and USPO Dudeck entered the hearing room at the Marshals Lockup to begin the hearing. The subject was already there and he immediately launched into tirade as the three of us entered the room. The subject was yelling, cursing loudly, calling everyone derogatory names and indicated his complete unwillingness to proceed with the hearing. This went on for several minutes and subject would not stop long enough for any of us to make a comment or ask a question. The subject made it clear he had no intentions of having a hearing; he made it clear that Attorney Knight was not representing him and he made it clear that he had no intentions of shutting up long enough for anyone else to say anything. The three of us never even sat down in the hearing area. It became obvious that a hearing was not going to take place with this subject present. Ultimately the Deputy Marshals were asked to remove the subject from the area.

This examiner considered taking this behavior as a decision by this subject to refuse to participate in the hearing. Under these circumstances, the hearing could proceed without him present. However, this prisoner does have a history of mental illness and this examiner had reviewed the Psychological Evaluation prepared by Dr. Daniel Koch on 7/24/2006. Dr. Koch had prepared this evaluation at the request of the Alabama Department of Rehabilitated (sic) Services. The subject had requested assistance from that agency and they had requested the evaluation. That evaluation describes how subject was uncooperative with a number of facets of the evaluation. At the bottom of page 2, it states "Mr. Patton can be hostile, argumentative, radius, impatient and manipulative". The next to the last paragraph on page 3 ends with "this is despite the fact that this patient is clearly mentally ill.["]

This examiner did not have the opportunity to do any mental

14

competency evaluation as outlined in the Commission procedures. The subject would not even accept questions or listen to comments. However, this examiner determined that it would be unfair to proceed with the Revocation Hearing without subject being present. This decision was based primarily on the high likelihood that the subject's suspected mental condition would prevent him from understanding the process.

Three subpoenaed witnesses were present for the hearing. Donna Gibson is this subject's sister. She was the victim of the alleged assault that occurred on 5/21/2006 (our Charge No. 1). Mobile, Alabama Police Officers Russell Hodge and Michael Kelly were the two officers who investigated the case on 5/21/2006. This examiner decided to take testimony from these individuals since they were present and it might be useful at a later time.

**Sworn Testimony of Donna Gibson:**

Ms. Gibson stated that she is the subject's sister and that the subject had been living in the home with her and their mother since his release 2/14/2006. She stated that there had been no serious difficulty from the date of release until May of this year. She said that on 5/21/2006 she had asked this subject to bring her some cigarettes from the store and when he returned he gave her the wrong kind of cigarettes. She stated that a discussion about this escalated into an argument. She acknowledged that she was the one who called police but she stated to this examiner that she called the police because she was mad at this subject but not because she was afraid of him. She acknowledged that the police report shows that the subject went after her with a knife and that he choked her. She stated that this is not really true. She stated that the subject was fixing a sandwich at the time they were arguing and that he had a knife in his hand that he was using. She stated that he did not threaten her with a knife nor did he chase her with a knife. She also said that subject did not hit her or choke her. She stated that she regrets getting angry [and] she regrets making this report to the

police. She is aware that the charge has been dismissed.

**Mobile, Alabama Police Officer Russell Hodge attended the hearing and provided sworn testimony:**

Officer Hodge stated that he and Officer Kelly responded to a report of an Assault that had occurred at subject's address on 5/21/2006. He stated that when they arrived at the residence the subject's sister Ms. Gibson was crying and was very upset. She told police that she and subject had argued and that subject "came at her with a knife" and that he choked her. Officer Hodge stated that he and Officer Kelly encountered Ms. Gibson in front of the residence. After they learned from her what had occurred they approached the front door, which was partially open. The subject saw them coming and tried to slam the door shut. Officer Kelly was able to get his foot in the door before it slammed. At this time the subject was standing behind the door and they noticed that he was holding a hammer. Officer Kelly told him several times to drop the hammer and subject handed it to his mother who was also standing inside the doorway. Officer Hodge stated that subject was very uncooperative and after obtaining some more information they placed the subject under arrest and charged him with Assault. Officer Hodge stated that statements made to him by Ms. Gibson were believable and, at the time the arrest occurred, he believed it was likely subject had assaulted Ms. Gibson by choking her and chasing her with a knife. Officer Hodge acknowledged that he did not see a knife at any time. Officer Hodge closed his testimony by stating that the charge against subject was dismissed in court primarily because subject's sister, Ms. Gibson[,] would not show up at court.

**Mobile, Alabama Police Officer Michael Kelly attended the hearing and provided sworn testimony:**

Officer Kelly provided a description of the incident that was almost [] identical to that provided by Officer Hodge. Officer Kelly also stated that he did not see a knife at any time. Officer

16

Kelly stated that subject's sister, Ms. Gibson, was believable on the day of the incident and that he felt it was likely an assault occurred.

USPO Kevin Dudeck was present at the hearing. He did not have any additional information about the criminal charge but he did make some other comments. Regarding Charge No. 2, Refusing to Participate in Mental Health Treatment, USPO Dudeck stated that this condition was not enforced at the time of subject's release in Febraury 2006. USPO Dudeck stated that the mandatory release[] certificate did not have a Mental Health Aftercare listed as a Special Condition of Release. The subject was under supervision for a number of months before it was discovered that the final Notice of Action ordering this subject to continue to expiration on his sentence did contain a Mental Health Aftercare Condition requirement. USPO Dudeck stated that when he informed the subject [of] this, it immediately began to cause problems. The subject had been reasonably cooperative with him up until that time. He stated it is apparent that this subject does not trust anyone, especially government employees who are supervising his life. USPO Dudeck stated that subject was immediately suspicious that it was some kind of conspiracy to cause him problems. He stated that he was not mentally ill and that he had been doing fine under supervision and did not want to participate in Mental Health Treatment. USPO Dudeck stated that he tried to reason with subject and attempted to explain to him that there was no choice but to comply with the instructions of the Commission on Mental Health Aftercare. USPO Dudeck stated that from that time forward he had problems trying to supervise and communicate with this subject. The subject made it very clear to him that he had no intentions of participating in Mental Health Aftercare.

As stated above, this examiner believes that it is highly likely that this subject's mental illness prevents him from fully understanding what is occurring. Revocation at this time is not recommended and it would be useless to try to schedule another hearing in Mobile, AL. The only reasonable option seems to be

transfer[] to the Bureau of Prisons for further Mental Health Evaluation and possible treatment before another attempt is made to conduct a hearing. Obviously, it might be necessary at some time to transfer subject back to Mobile, AL for a Local Revocation Hearing. The subject might change his mind and agree to an Institutional Revocation Hearing but that does not seem very likely. Whatever the final outcome of this, it appears that the subject cannot remain indefinitely in the custody of the US Marshal and it is also obvious that a hearing cannot be conducted until his mental condition stabilizes.

**Recommendation:** Transfer subject into the Bureau of Prisons to a facility suitable for Mental Health Evaluation and Treatment. The Bureau of Prisons is requested to advise the Parole Commission of subject's mental health status within 60 days of receiving him in the institution. The Commission will conduct a Revocation Hearing after it is determined by the Bureau of Prisons that subject will be able to comprehend the hearing procedure.

(*Id.*)

17.    On January 9, 2007, the Parole Commission entered the following non-appealable action/order: "Transfer subject into the Bureau of Prisons to a facility suitable for mental health evaluation and treatment. The Bureau of Prisons is requested to advise the Parole Commission of subject's mental health status within 60 days of receiving him at the institution. The Commission will conduct a Revocation Hearing after it is determined by the Bureau of Prisons that subject will be able to comprehend the hearing procedure." (Doc. 7, Exhibit Z)

## CONCLUSIONS OF LAW

1.      Petitioner seeks habeas corpus relief pursuant to 28 U.S.C. § 2241 which provides, in relevant part, that the writ of habeas corpus extends to a prisoner "in custody under or by color of the authority of the United States[.]" 28 U.S.C. § 2241(c)(1). Section 2241 has been found to be a proper vehicle for challenging actions of the United States Parole Commission. *See, e.g., Barge v. United States Parole Comm'n*, 2003 WL 23473084, *1 (N.D. Tex. 2003); *Ladigo v. Seifert*, 42 Fed.Appx. 950, 2002 WL 1788005, *1 (9th Cir. 2002) (unpublished decision); *King v. Hasty*, 154 F.Supp.2d 396, 398 (E.D. N.Y. 2001).[5]

2.      The Sentencing Reform Act of 1984 abolished the Parole Commission and repealed most of the pre-existing statutory framework governing parole of federal prisoners; it replaced "a system of indeterminate sentences and the possibility of parole with determinate sentencing and no parole." *Walden v. United States Parole Comm'n*, 114 F.3d 1136, 1138 (11th Cir. 1997) (citation omitted).

On December 7, 1987 . . . Congress passed the

---

[5]     While it is clear that "[a] petitioner must exhaust all available administrative remedies before filing a petition for habeas corpus relief, including in the parole context[,]" *King, supra*, 154 F.Supp.2d at 400, in the instant case the federal respondents have explicitly waived the exhaustion requirement by addressing the merits of the petition (*see* Doc. 7).

> Sentencing Act of 1987 which modified § 235(b)(2) of the SRA of 1984 in a manner that returned sentencing law to its pre-SRA state for pre-SRA sentenced prisoners. The "winding-up" provision, § 235, temporarily saved the USPC and the federal parole statutes for five years (until November 1, 1992). Because many more prisoners have remained incarcerated under the old system than was originally predicted in 1984, Congress has repeatedly extended the period of time that the USPC and the federal parole statutes are to be "saved."[6]
>
> The most recent extension of the USPC occurred on September 29, 2005,[7] when the United States Congress extended the life of the USPC for another three years.

*Cloyd v. Stine*, 2006 WL 2038035, *3 (E.D. Ky. 2006) (internal citations and footnote omitted; footnotes added). Accordingly, it is clear that for those federal prisoners sentenced prior to November 1, 1987, and still subject to supervision pursuant to those sentences, they remain subject to all the repealed parole laws until their sentences expire.

3.      "Judicial review of Parole Commission decisions is narrow and 'is limited to whether the Commission acted outside its statutory authority or committed a constitutional violation.'" *Ladigo, supra*, 42 Fed. Appx. at 951

---

[6]      *Bledsoe v. United States*, 384 F.3d 1232, 1234 n.2 (10th Cir. 2004) ("Congress has repeatedly extended the life of the Parole Commission to administer those prisoners with pre-SRA sentences."), *cert. denied*, 544 U.S. 962, 125 S.Ct. 1745, 161 L.Ed.2d 605 (2005).

[7]      *See Lucas v. Reilly*, 2005 WL 3303940, *2 (E.D. Ky. 2005) ("On September 29, 2005, the United States Congress extended the life of the U.S. Parole Commission for another three years.").

(internal and external citations omitted); *see also Luther v. Molina*, 627 F.2d 71, 75 (7th Cir. 1980) ("It is apparent that Congress intended to give the Parole Commission great latitude in making decisions relative to revocation."). As one circuit court has noted, "[t]he Parole Commission supervises the paroled convict, and may at any time, upon notice and hearing, change the conditions of the parole, revoke it or even terminate it entirely." *Knight v. United States*, 73 F.3d 117, 120 (7th Cir. 1995) (internal and external citations omitted), *cert. denied*, 519 U.S. 827, 117 S.Ct. 90, 136 L.Ed.2d 46 (1996).

      4.     It is clear that "[a] parolee arrested pursuant to a parole violator warrant is entitled to a preliminary interview 'without unnecessary delay' to determine whether there is probable cause for the charged parole violations." *Barge, supra*, 2003 WL 23473084, at *2 (citations omitted); *see also* 18 U.S.C. § 4214(a)(1)(A) (1984) ("Except as provided in subsections (b) and (c), any alleged parole violator summoned or retaken under section 4213 shall be accorded the opportunity to have [] a preliminary hearing at or reasonably near the place of the alleged parole violation or arrest, without unnecessary delay, to determine if there is probable cause to believe that he has violated a condition of his parole[.]"); 28 C.F.R § 2.48(a) (2006) ("A parolee who is retaken on a warrant issued by a Commissioner shall be given a preliminary

interview by an official designated by the Regional Commissioner to enable the Commission to determine if there  is probable cause to believe that the parolee has violated his parole as charged, and if so, whether a revocation hearing should be conducted. The official designated to conduct the preliminary interview may be a U.S. Probation Officer in the district where the prisoner is confined, provided he is not the officer who recommended that the warrant be issued.").

> Assuming that a preliminary hearing was not promptly conducted, "a due process violation occurs only when [the parolee] establishes" that the delay "'was both unreasonable and prejudicial.'"

*Barge, supra*, at *2 (citations omitted).

5.    Petitioner alleges in this habeas corpus action that the federal respondents deprived him of due process of law by issuing a falsified violator warrant which resulted in his unlawful arrest[8] and by failing to conduct a

---

[8]    It is Patton's contention that his arrest was unlawful based upon the violator warrant charge of failing to abide by the special condition of seeking mental health treatment since such condition was not specifically listed as a condition of parole upon his release from prison. (*See* Doc. 18, at 2) Even assuming the correctness of petitioner's argument in this regard, this Court has no basis to find that the other alleged charge in the violator warrant (domestic violence in the third degree) was false, given the Parole Commission's subsequent finding of probable cause with respect to this charge and case law in this circuit indicating that a violator warrant can be issued despite the dismissal of underlying criminal charges, *Walden, supra*, 114 F.3d at 1136-1137 ("Darryl W. Walden was convicted of armed robbery in 1973, and received a fifteen year sentence. He was incarcerated and later transferred to a federal institution. He was paroled in 1980. In 1983, he was arrested in Virginia after a traffic stop during which drug paraphernalia was found in the car. **All charges against Walden were ultimately dismissed,**

timely preliminary interview. (*See* Doc. 1, at 3-7 & 8-9) There is no dispute here that petitioner's preliminary interview, conducted as it was on November 8, 2006, some fifty-five (55) days after his arrest on September 15, 2006, was untimely. However, petitioner has not shown that the delay in conducting his interview was unreasonable or prejudiced him in any way. *See King, supra*, 154 F.Supp.2d at 401. It was at petitioner's insistence that the preliminary interview was postponed, initially, from September 15, 2006. Thereafter, as a result of a mis-communication between the United States Probation Officer, who attempted to conduct the preliminary interview on September 15, 2006, and the Parole Commission regarding whether a combined preliminary interview/local revocation hearing would take place, the preliminary interview/hearing was not conducted until November 8, 2006. Certainly, there has been no showing that the delay was intentionally created, which mitigates against a finding that the delay was unreasonable. More importantly though,

---

**but a parole violator warrant was issued. After his return to custody, the Parole Commission [] held a parole revocation hearing, and his parole was revoked.**"); *see also Perry v. United States Parole Comm'n*, 831 F.2d 811, 813 (8th Cir. 1987) ("We hold the Parole Commission properly considered the dismissed federal charge as a ground for parole revocation. 'There is a significant difference between a judicial dismissal . . . and a finding of not guilty after trial.' . . . Moreover, a Commission's independent finding of a violation of the conditions of parole is 'unaffected by the dismissal of the state charge arising out of the same conduct.' . . . The Parole Commission can consider charges that have been dismissed before trial as grounds for parole revocation. . . . Parole commission regulations also authorize consideration of charges which have been dismissed if the Commission makes its own independent finding of 'new criminal conduct.'"), *cert. denied*, 485 U.S. 963, 108 S.Ct. 1230, 99 L.Ed.2d 429 (1988).

Patton has not established that the delay in any way resulted in any prejudice. To be sure, the witnesses Patton requested to be present to give testimony during the preliminary interview/hearing were not summoned to appear[9] but the failure of the adverse witnesses to appear did not prejudice petitioner inasmuch as all of these witnesses would have given testimony only relating to the first charge (i.e., Patton's third-degree domestic abuse arrest) and the probation officer conducting the preliminary interview, Richard Bemis, recommended that the Commission find no probable cause with respect to that charge.[10] Accordingly, prejudice is found lacking.

6.    Petitioner also contends that the Parole Commission's January 9, 2007 Notice of Action ordering a mental evaluation to determine his competency to engage in a revocation hearing is a legal nullity given the Commission's earlier denial of a request for mental evaluation made by

---

[9]    By petitioner's own admission, his sister, Donna Gibson, was "voluntarily" present during the preliminary hearing on November 8, 2006. (Doc. 1, at 5-6 ("And although petitioner's requested voluntary witness, Mrs. Donna P. Gibson[,] was presence (sic) during the November 8, 2006 preliminary hearing, neither Mrs. Donna P. Gibson, nor any of the requested adverse witnesses were summoned to testify on petitioner Patton-Bey's behalf."))

[10]    While it is true that the Parole Commission, on review, found probable cause with respect to this charge, in order to establish the prejudice required in this instance petitioner would have to establish that the Parole Commission would have completely embraced his sister's recantation and rejected the responding officers' beliefs that an assault had taken place. *See Walden, supra,* 114 F.3d at 1136-1137 (dismissal of charges does not invalidate parole violator warrant based on those very charges dismissed). At this stage in the proceedings, petitioner has not and cannot carry this burden.

petitioner's attorney, Christopher Knight, Esquire (*see* Doc. 14, at 2;  Doc. 18,

at 2-3), and this Court's failure to enter an order decreeing his "committment

for psychological evaluation and treatment[.]" (Doc. 14, at 2)[11] While it is true

that the Parole Commission denied the request of petitioner's attorney to have

petitioner's mental competency evaluated, such denial does not pretermit the

ability of the examiner, who attempted to conduct the revocation hearing, from

applying applicable regulations and ordering a competency evaluation.

> (a)    Whenever a prisoner (or parolee) is scheduled for
> a hearing in accordance with the provisions of this part and
> reasonable doubt exists as to his mental competency, i.e., his
> ability to understand the nature of and participate in scheduled
> proceedings, a preliminary inquiry to determine his mental
> competency shall be conducted by the hearing panel, hearing
> examiner or other official (including a U.S. Probation Officer)
> designated by the Regional Commissioner.

> (b)    The hearing examiner(s) or designated official
> shall receive oral or written psychiatric or psychological
> testimony and other evidence that may be available. A
> preliminary determination of mental competency shall be made
> upon the testimony, evidence and personal observation of the
> prisoner (or parolee). If the examiner(s) or designated official

---

[11]    This Court has no involvement in actions taken by the Parole Commission for
federal prisoners/parolees being supervised with respect to sentences imposed prior to November
1, 1987, *see, e.g., Bledsoe, supra*, 384 F.2d at 1234 ("On December 7, 1987, thirty-six days after
the SRA became effective, Congress amended the Act to clarify that the terms of the PCRA
would continue to govern the sentences of those prisoners sentenced prior to the effective date of
the SRA [--November 1, 1987--], and extended the life of the Parole Commission to administer
those sentences."); therefore, this Court had no authority to issue an order committing petitioner
to the Bureau of Prisons for a psychological evaluation.

determines that the prisoner is mentally competent, the previously scheduled hearing shall be held. If they determine that the prisoner is not mentally competent, the previously scheduled hearing shall be temporarily postponed.

(c)     Whenever the hearing examiner(s) or designated official determines that a prisoner is mentally incompetent and postpones the previously scheduled hearing, they shall forward the record of the preliminary hearing with their findings to the Regional Commissioner for review.

.     .     .

(2)     In the case of a parolee in a revocation proceeding, the Regional Commissioner shall postpone the revocation hearing and order that the parolee be given a mental health examination in a suitable facility of the Bureau of Prisons or the District of Columbia. The postponed revocation hearing shall be held within 60 days, or as soon as a satisfactory mental health report is submitted.

28 C.F.R. § 2.8(a), (b) & (c)(2) (2006); *see United States v. McCarty*, 747

F.Supp. 311, 313 (E.D. N.C. 1990) ("[T]he parole regulations expressly

provide a procedure for conducting mental competency proceedings for

parolees. Under the applicable regulation, a parolee found incompetent to

participate in a revocation hearing may be transferred to a Bureau of Prisons

facility for further examination. . . . The record before the court indicates that

McCarty has been found incompetent under § 2.8, and is presently being held

pursuant to that section."). In accordance with this regulation, the hearing

examiner properly questioned Patton's mental competency on December 21,

26

2006 and properly postpone the revocation proceeding and ordered a mental competency evaluation. As reflected in the examiner's hearing notes, Patton would not allow the revocation hearing to be conducted as contemplated in the regulations. From the outset, Patton totally disrupted the proceeding with his rantings and thereby made it impossible for the examiner to conduct the hearing with petitioner present.[12]  Petitioner is properly being held in custody pursuant to § 2.8. *See McCarty, supra*, 747 F.Supp. at 312 & 313 ("McCarty comes to the court in an unusual position. He is a parolee held on a parole violator's warrant. His parole has not been formerly revoked, and the Parole Commission has determined that he is incompetent to proceed with a parole revocation hearing. Despite the government's efforts, McCarty remains a parolee, and must be treated as would any other parolee in like circumstances. . . . The record before the court indicates that McCarty has been found incompetent under § 2.8, and is presently being held pursuant to that section.").

---

[12]     Petitioner's filings in this Court do not call into question the veracity of the examiner's actions in this regard. (*See* Doc. 18, at 2 ("For although U.S. Parole Commissioner asserts that petitioner is now mentally ill and require a competency evaluation because he refused to participate in the bias pre-determine[d] December 21, 2006 alleged revocation hearing conducted by three (3) white racist federal agent[s] in violation of the U.S. Supreme Court decrees in Morrissey v. Brewer, 408 U.S. 471 (1972) and Gagnon v. Scarpelli, 411 U.S. 778 (1973).")

7.     The undersigned has read the petition and Patton's various responses numerous times and can find nothing in those pleadings to indicate that petitioner is in any way making the allegation that he has completed his original sentences and, therefore, is not subject to the jurisdiction of the Parole Commission. (*See* Docs. 1, 14 & 18) If, in fact, petitioner intended to make such argument it need fail because petitioner has not proven through citation to sentence-calculation regulations that he has reached the end of his original sentence(s) nor has he refuted any of the sentence calculations made by the Parole Commission. Accordingly, as reflected in the factual findings made herein, Patton remains subject to the custody and supervision of the Parole Commission based upon his combined sentences from August 25, 1976 (17 years) and February 3, 1982 (3 years, 6 months).

## <u>CONCLUSION</u>

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request for habeas corpus relief, pursuant to

28 U.S.C. § 2241, should be denied.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 17th day of April, 2007.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.      ***Objection***.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                              s/WILLIAM E. CASSADY
                              UNITED STATES MAGISTRATE JUDGE